

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

JIMMY W. LOVELL,

    Plaintiff,

vs.                              CASE NO. CV-03-J-1759-NE

STAR, LLC and STAR, LLC d/b/a
DAYS INN MADISON,

    Defendant.

**MEMORANDUM OPINION**

Currently pending before the court is the defendant's motion for summary judgment (doc. 32) and brief in support of said motion (doc. 33), to which the plaintiff failed to respond.[1] Having considered the pleadings, evidence and memorandum of the defendant, the court finds as follows:

### I. FACTUAL BACKGROUND

The plaintiff commenced this action by filing a complaint in the Circuit Court of Madison County, Alabama, asserting state law claims for negligence, wantonness, and negligent/wanton hiring, supervision & retention, for injuries he received at defendant's motel when he was awoken from his sleep by "hundreds of insects crawling on all areas of his body and realized they were biting him." Complaint, ¶ 6.

---

[1] Pursuant to this court's Scheduling Order entered August 14, 2003, the deadline for dispositive motions was April 30, 2004. Based on an agreed motion to extend time (doc. 25), the court extended that deadline to June 30, 2004 (doc. 26). The defendant timely filed its motion on that date. Under Exhibit A to the court's Scheduling Order of August 14, 2003, the plaintiff had fourteen (14) days to respond to the defendant's motion. Thus, the plaintiff's deadline to respond was July 14, 2004.

The defendants filed a Notice of Removal, asserting this court has diversity jurisdiction[2] (doc. 1).

The following facts are not in dispute: The plaintiff had stayed at the defendant motel in August, 2002, while working in the area. Plaintiff depo. at 26. The following week, on August 26, 2002, the plaintiff again checked into the defendant motel. *Id.*, at 26-27. He looked over the room to make sure it was clean and comfortable, deposited his personal effects, and then went to work. *Id.*, at 27, 34-35, 38. When he returned that evening, the room was still clean and comfortable. *Id.*, at 36. When he pulled the covers on the bed back, he did not see any bugs. *Id.*, at 37, 40.

In the early hours of August 27, 2002, the plaintiff received the bites at issue in this case. *Id.*, at 27. He woke up between 1:00 a.m. and 1:15 a.m. because he could not breathe. *Id.*, at 41, 43. After he caught his breath, he realized something was crawling all over him. *Id.*, at 42-43. He could feel bugs mainly on the right side of his neck, his ears, and his mouth, but all over him too. *Id.*, at 44. When he turned the light on in the room, he was still wiping bugs off of himself and noticed blood on his shirt, shorts, body and in his bed. *Id.*, at 45, 47. He had bites on his left eye and both ears, his arms and his legs. Plaintiff depo. at 48, 62.

---

[2]Days Inn Worldwide, Inc., jointly filed the Notice of Removal with Star, LLC. Days Inn Worldwide, Inc. has since been dismissed from this case (docs. 27 and 28).

The plaintiff called his supervisor, Greg Sparks, sometime between 1:30 and 2:00 a.m., highly upset, and asked him to come look at the motel room. Sparks depo. at 14, 19. When Sparks arrived, the plaintiff pulled the bed covering back to the foot of the bed and moved the pillow. *Id.*, at 24. Sparks saw little black bugs crawling underneath where the pillows were and running along the top of the mattress in the wall and headboard area. *Id.* He estimated he saw less than 100 bugs under the pillow and "movement everywhere" along the headboard area. *Id.*, at 25. The plaintiff was given another room, but took none of his personal belongings with him. Plaintiff depo. at 71. The defendant does not dispute that the plaintiff was attacked by bedbugs while staying at the defendant motel. Khudai depo. at 120-121.[3]

The plaintiff never sought any medical treatment for his bites. Plaintiff depo. at 49. His wife gave him lotion to put on the bites when he returned home several days later. *Id.* The bites lasted four to six days, but left no scars. *Id.*, at 11, 51, 61. The plaintiff sought psychiatric treatment one time, three to four months later, at the advice of his attorney. *Id.*, at 11, 49. The plaintiff bagged some of the bugs in his room and brought them to the front desk of defendant motel. *Id.*, at 62; Sparks depo. at 40. He also took some in a bag to the health department. Plaintiff depo. at 62. When health department employees arrived, people from Cook's Pest Control were already there. *Id.*, at 71, 86. However, no one had swept or vacuumed the room. *Id.*,

---

[3]Rashik Khudai is the general manager of the motel. Khudai depo. at 11.

at 71. The plaintiff asked an employee of Cook's what the bugs were, and he responded he did not know. *Id.*, at 88. The Cook's employee left and returned with his boss at the same time that a woman from the health department arrived. *Id.*, at 89. Neither of them could identify the bugs. *Id.*, at 89, 96-97.

At that time, the woman from the health department asked the plaintiff to put some of the bugs in a bag for her, which he did. Plaintiff depo. at 89. Meanwhile, the Cook's supervisor left, returned and stated the bugs were bed bugs, and that he had not heard of any in 20 or 30 years. Sparks depo. at 74. The woman from the health department also told the plaintiff he had been infested with bedbugs.[4] Plaintiff depo. at 90. She instructed the Cook's employees to spray plaintiff's original room and the second one he was assigned, and defendant placed plaintiff in a third room. Plaintiff depo. at 91.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court must consider the evidence in the light

---

[4] She also explained to the Cook's employees that the plaintiff could not have brought the bedbugs with him, because their eggs take 90 days to hatch. Plaintiff depo. at 91.

most favorable to the plaintiff and may not make credibility determinations nor weigh the parties' evidence. *Frederick v. Sprint/United Management Co.* 246 F.3d 1305, 1311 (11th Cir.2001); *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir.2000). Although the plaintiff has failed to file a response to the defendant's motion for summary judgment, no procedural tool for a default summary judgment exists under Fed.R.Civ.Pro. 56(e). The court must still find that summary judgment is appropriate from the pleadings and the evidence. However, " the language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322-23. With these standards in mind, the court considers each of the plaintiff's claims.

### III. LEGAL ANALYSIS

Rashik Khudai, the motel general manager, testified that when a guest is staying at the defendant motel for a long period of time, the motel requires that sheets be changed at least every three days.[5] Khudai depo. at 55-56. Otherwise, the sheets are changed daily. *Id.* The health department makes unannounced inspection visits. *Id.,* at 75. Days Inn Worldwide also makes three unannounced inspections a year. *Id.,* at

---

[5] He also testified that he and his wife live at the motel. Khudai depo. at 83.

5

76-77. If the motel did not meet Days Inn Worldwide standards, the first occurrence would result in a warning. *Id.*, at 77. The second occurrence would result in loss of the franchise. *Id.* at 77.

After he learned of the bed bug attack, Khudai had the furniture in that room removed and destroyed. Khudai depo. at 112. He had all adjacent rooms inspected, but did not locate the source of the bugs. *Id.* There had been no prior bedbug problem. *Id.*, at 113. Khudai's policy is that either he or his wife personally inspect every room in between guests, and neither of them ever observed any bedbugs. *Id.*, at 114-116. He testified that they had no policies specific to bed bugs in place because it had never been an issue for them in the past. *Id.*, at 122-123. He had no prior complaints from guests encountering insects or rodents. *Id.*, at 146.

Plaintiff's expert, Bruce Alverson, stated he has never been involved in a bedbug case before. Alverson depo. at 8. He testified that in his 40 year career in pest control, he had only seen bedbugs two months before his deposition while at the University of Florida for a conference; the time before that he heard of an infestation at motels near a gambling ship in 1994 or 1995; and the time before that was in 1957 or 1958 in Atlanta, Georgia. *Id.*, at 17-18. Bed bug infestations are not common in Alabama, but seem to be making a resurgence due to the elimination of chemical treatments by the pest control industry since the 1980's. *Id.*, at 19, 20-22. He testified he did not know what the standard in the hotel industry was for preventative

control for bedbugs. *Id.*, at 51. Rather, based on his own experience with an extermination company, Alverson described procedures he undertook for bedbugs once they were known to be present. *Id.*, at 53-54. Although he had recommendations for preventative treatment, Alverson was not aware of any hotel in Alabama performing such treatment for bedbugs during the relevant time period. *Id.*, at 89.

Alverson testified bed bugs take four to six weeks to go from egg to adult. Alverson depo. at 64. Therefore, he opined the infestation had to be present for more than four to five weeks, since adult bedbugs were present. *Id.*, at 65. However, he agreed that they are difficult to detect and that normal room cleaning procedures would have no affect of their harborage sites. *Id.*, at 66. He also testified he did not fault defendant for the introduction of bedbugs into the plaintiff's room, nor was the same preventable. *Id.*, at 92, 97.

The plaintiff seeks to hold defendant liable for injuries he received while a guest at defendant's motel. To prevail on his claim, the plaintiff must establish that the defendant owed a legal duty to him, breached that duty, and that he was injured as a proximate result of that breach. *Whataburger, Inc. v. Rockwell*, 706 So.2d 1220, 1223 (Ala.Civ.App.1997). The defendant was obligated to maintain its premises in a reasonably safe condition. More specifically, a hotel keeper must furnish safe premises for a guest, which he "may use in the ordinary and reasonable way without

danger; and if any guest, while using the building where [he] is reasonably expected to go, is injured by a defective condition of the building, the manager is liable for the injuries to his guest that are proximately caused by his negligence in the defective condition." *Shiv-Ram, Inc. v. McCaleb,* 2003 WL 23025586, 11 (Ala.2003), *citing Dye-Washburn Hotel Co. v. Aldridge,* 207 Ala. 471, 474, 93 So. 512, 514 (1922).

"[T]he general rule and the law of this jurisdiction [is] that it is the duty of a hotel operator to keep his buildings and premises in a condition reasonably safe for the use of his guests, and where his negligence in this respect is the proximate cause of an injury to a guest he is liable therefore." *Robertson v. Travelers Inn,* 613 So.2d 376, 379 (Ala.1993); *citing Hillman Hotel v. McHaley,* 251 Ala.655, 657, 38 So.2d 566, 567 (1948). The general duty of a business defendant is to use ordinary or reasonable care to keep its premises in a reasonably safe condition. It is not, however, an insurer of the safety of its guests or invitees. *Kittrell v. Alabama Power Co.,* 258 Ala. 381, 383, 63 So.2d 363 (Ala.1953). *See also Kmart Corporation v. Bassett,* 769 So.2d 282, 285 (Ala.2000).

The mere fact that a business invitee is injured does not create a presumption of negligence on the part of the premises owner. Rather, the owner is liable in negligence only if it fails to use reasonable care in maintaining its premises. *Kmart Corporation,* 769 So.2d at 285, citing *Hose v. Winn-Dixie Montgomery, Inc.,* 658 So.2d 403, 404 (Ala.1995). "The defendant is required to exercise reasonable care

8

before its invitee comes to his premises to have the premises reasonably free from danger to the invitee when he arrives and to so keep the premises when the invitee is on the premises..." *Kittrell*, 258 Ala. at 383.

Thus, to prevail on the defendant's motion for summary judgment, the plaintiff must present evidence that the defendant failed to use reasonable care to maintain its premises in a reasonably safe condition and that such failure proximately caused the plaintiff's injuries. However, the plaintiff has produced no evidence from which this court could hold that the defendant knew or should have known that he should treat the premises in question for bedbugs. The plaintiff has failed to establish that the defendant had any knowledge of the bedbug infestation.

Plaintiff's own expert testified that he knew of no bedbugs in Alabama for the previous five years. He further did not know what, if any, the industry standard for the prevention of bedbugs might be. No evidence of such an infestation in any other area in the motel was presented. No evidence established that any pest problem had come to the attention of the defendant which would have caused a reasonable motel owner, in the exercise of due care, to investigate, treat and prevent the infestation of bedbugs at that location.

The plaintiff has offered no evidence that the defendant breached its duty to the plaintiff to exercise reasonable care in maintaining its premises. As such, the plaintiff

9

cannot prove that any injury he received was proximately caused by the defendant's breach of that duty. The defendant is therefore entitled to judgment in its favor as a matter of law. The court therefore being of the opinion that the defendant's motion for summary judgment is due to be granted;

It is **ORDERED** by the court that defendant's motion for summary judgment be and hereby is **GRANTED**. This case is **DISMISSED WITH PREJUDICE.**

**DONE** and **ORDERED** this the  20  day of July, 2004.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE